T.C. Memo. 1996-326

UNITED STATES TAX COURT

DENNIS J. TANG AND ALICE SHU-LING TANG, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6248-94.                    Filed July 17, 1996.

<u>Mark G. Goshgarian</u>, for petitioners.

<u>Roberta A. Duffy</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

FAY, <u>Judge</u>:  In the notice of deficiency, respondent
determined deficiencies in petitioners' Federal income taxes and
a penalty in the following amounts:

|       |            | Penalty |
|       |            | Sec. |
| <u>Year</u> | <u>Deficiency</u> | <u>6662(a)</u> |
| 1990  | $31,638    | $6,328 |
| 1991  | 224        | -- |

All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

The issues for decision are:

(1)  Whether petitioners failed to report income during the 1990 and 1991 taxable years.  We hold that they did.

(2)  Whether petitioners are liable for the accuracy-related penalty under section 6662(a) for the 1990 taxable year.  We hold that they are.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation and the attached exhibits are incorporated herein by this reference.  Petitioners resided at 616 Winthrop Road, San Marino, California, at the time their petition was filed.  On January 18, 1994, respondent issued a statutory notice of deficiency to petitioners with respect to their 1990 and 1991 taxable years.

Petitioners have been married since 1982.  Dennis J. Tang (petitioner) was born in China.[1]  Petitioners first came to the United States to reside in 1987.  Petitioner's passport, issued by the Republic of China, is in the name of Jung-Jing Tang.

---

[1]The record does not reveal where petitioner wife was born.

Petitioner is not a U.S. citizen but does hold a "green card".[2]
Petitioner is known in the United States by the name Dennis Jung
Jing Tang.  Petitioner Alice is known in the United States as
Alice Shu-Ling Tang.  Her Chinese name is Fong Shu-Ling.

Petitioner received a degree in medicine in Taiwan.  How-
ever, petitioner has never been certified to practice medicine in
the United States.  Petitioner testified that, when he first came
to the United States, he did not need to work because his father,
who owned a hospital in China, was able to provide for his and
his family's support.  Petitioner testified that he did not work
for compensation in the United States at any time during the
years 1987 through 1992.  Petitioner spent approximately 5 or 6
months a year in Taiwan during each of the years in issue.
During 1990, petitioner worked part time as a doctor at Tang's
Clinic in Taiwan.  During 1991, petitioner was employed by George
Realty in California.  During 1992, petitioner was employed by
Galaxy Investment Co. as a real estate salesperson.

Petitioner is a follower of the principles and spiritual
rules of Taoism.  Petitioner testified that Taoism requires you
to reduce your desires as much as possible while you concentrate
on your physical condition, the ultimate goal being to become
very healthy physically and spiritually.  Petitioner was

---

[2]A green card is a registration card issued to an alien as
evidence of the alien's status as a permanent resident of the
United States.  Black's Law Dictionary (6th ed. 1990).

introduced to Taoism by a schoolmate, Yao Min Ting.[3]  Yao Min
Ting served as petitioner's Taoism master.  A Taoism master is an
individual who teaches the principles of Taoism to those who do
not yet know them.  One of the beliefs of Taoism requires that
its adherents teach other people who are receptive to the
religion and its spiritual rules.  Taoism promotes the belief
that, in teaching others, a person's own life will be improved.
In accordance with this custom, petitioner taught Taoism to
others.  However, petitioner testified that he did not require
those whom he taught to pay him for their lessons.

In 1987, petitioner placed an advertisement in the Chinese
Daily News, a Chinese language newspaper.  The advertisement
appeared approximately five times from 1987 through 1991.  The
advertisement was printed in Chinese.  Petitioners' California
phone number was printed on the advertisement.  The advertisement
was placed on a page with several other advertisements, including
at least two ads for Chinese restaurants and two for other
companies.  Petitioners submitted a translation of the advertise-
ment.  Respondent submitted her own translation of the advertise-
ment that differed from petitioners'.[4]  The title of the adver-
tisement is "The Way to Life Energy".  The advertisement begins

---

[3]Petitioner refers to Yao Min Ting also as Ting Yao Min.  We
believe that they are the same person.

[4]We have attempted to reconcile these translations where
possible.

by setting forth petitioner's qualification as a medical doctor with many years of experience. Then it goes on to speak of petitioner's knowledge of methods to activate life energy so that self-healing and healing of others is possible. The advertisement specifically mentions petitioner's knowledge of methods that would enhance a doctor's healing abilities by better allowing him to detect viruses and bacteria. The advertisement does not use the word "acupuncture"; however, it does imply acupuncture by referring to energy channels or meridians. These meridians or channels are important in the treatment of patients through the use of acupuncture and acupressure.

In response to petitioner's advertisement, Dr. Kun C. Chan contacted petitioner. Dr. Chan is a doctor of medicine and acupuncture. Dr. Chan received a medical degree in China from a school in the city of Wuhan. Dr. Chan is licensed to practice acupuncture in the State of California. Dr. Chan is a shareholder of Shanghai Acupuncture Clinic and Institute, Inc. (Shanghai Clinic), a California corporation. Dr. Chan had signatory authority over Shanghai Clinic's bank account.

Dr. Chan was practicing acupuncture and acupressure during the years herein at issue. Acupuncture is a technique whereby a professional attempts, using thin needles, to puncture the skin. This process attempts to restore the body's energy flow so that the yin and the yang are balanced. The yin and the yang are

opposing forces, and the belief is that balancing these forces keeps a person in optimum health.

In order to be certified to practice acupuncture in the State of California, the Board of Medical Quality Assurance requires that practitioners attend between 15 and 30 hours of approved classes each year. To further his education in the field of acupuncture, Dr. Chan attended seminars required by the Board of Medical Quality Assurance, telephoned associates in China, and contacted others who have special knowledge. Dr. Chan did not compensate friends in China with whom he discussed acupuncture for their time or their counsel. In general, Dr. Chan paid for continuing education only when it took place in the form of formal seminars.

Dr. Chan contacted petitioner because he was intrigued by petitioner's advertisement which referred to the estra meridians of acupuncture. Dr. Chan first met petitioner during August 1987. The meeting took place at petitioners' home. During the meeting, Dr. Chan and petitioner spoke Chinese. However, Dr. Chan testified that he was not certain whether he knew petitioner's Chinese name at that time.

During the initial meeting, Dr. Chan and petitioner discussed opening Dr. Chan's eight estra meridians, which would enhance his own energy patterns and cause him to do good things automatically, as well as enhance his healing capabilities. Dr. Chan felt a profound change after his meeting with peti-

tioner.  For instance, he felt a tingling in his palms, along with an attraction between his two hands.  Dr. Chan believed that this feeling was caused by the opening of his eight estra meridians.

Dr. Chan and petitioner did not meet again until 1989.  In 1989, Dr. Chan began meeting with petitioner to learn from him. Petitioner taught Dr. Chan the rules and beliefs of Taoism during their meetings.  Petitioner also taught Dr. Chan how to direct his energy.  Dr. Chan testified that he learned how to hold his finger over an ache and use energy to treat the pain.  The lessons were not held at regular intervals, and each lesson lasted between 2 and 5 hours.  The lessons were held at petitioners' home in San Marino, California.

Petitioner never sent Dr. Chan an invoice for the instructional sessions.  However, Dr. Chan claims that petitioner charged an average of $10,000 for each lesson.  Dr. Chan indicated that he personally benefited from the techniques, because his health improved, and the lessons improved his ability to treat his patients.  The main purpose of the lessons was that Dr. Chan would be better able to treat his patients.  During the lessons, petitioner purported to teach Dr. Chan how to position his fingers in such a way that they would heal patients.

Dr. Chan generally wrote checks for the cost of the lessons. Once, a telegraph transfer of money was used instead of a check. The following checks drawn on the account of Shanghai Clinic were

introduced at trial.  Two checks (one from October 9, 1989,[5] in the amount of $10,000, and one from March 12, 1990, in the amount of $10,000) were made out to Dr. Chan as payee.  The second of these checks has written in the "Description" area "Reimburse - Training".  Dr. Chan claims that he had, on these two occasions, paid petitioner with a personal check, and then Shanghai reimbursed him for the cost of the lessons.  Five checks, totaling $65,000, were made out to Yao Min Ting.  The first check, dated April 9, 1990, was in the amount of $15,000, and included the notation "Business Consulting" in the description line of the check.  The second check, dated May 9, 1990, was in the amount of $15,000 was also described as a "Business Consulting" fee.  The third check, dated June 9, 1990, was for $15,000 and was described as a "Business Consulting Fee".  The fourth check, dated November 30, 1990, was for $10,000 and was described as a "Consultation" fee.  The fifth check, dated January 31, 1991, was for $10,000 and was again described as a "Consultation" fee. Three checks, totaling $25,600, were made out to Ting Yao Min. The first, on June 25, 1990, was for $15,000 and was described as a business consultation fee.  The second dated August 8, 1990, was for $10,000.  The third check, dated September 17, 1990, was for $600 and was described as a consultation fee.  One wire

_____

[5]We note that the 1989 tax year is not herein in issue.

transfer of $10,800 was sent to the account of Tang Chiang Ting[6] on April 2, 1990. Dr. Chan claimed that, in April and September 1990, he paid petitioner $15,000 and $10,000,[7] respectively, as compensation for lessons. No checks were presented to corroborate this claim. Shanghai Clinic deducted its expenses for these lessons as educational and business expenses on its corporate returns.

Yao Min Ting visited the United States during 1989 and 1990. He visited petitioners several times during 1990. He maintained a bank account at Sumitomo Bank. A signature card from Yao Min Ting's account at Sumitomo Bank of California lists petitioners' address, 616 Winthrop Road, San Marino, California, as his own.

Petitioner testified that, in 1990, Dr. Chan offered, merely as a sign of gratitude on his own volition, to write petitioner a check for any amount petitioner requested. Instead, petitioner instructed Dr. Chan to show his gratitude by sending a gift or

[6]The record does not reveal who Tang Chiang Ting is or his relationship with petitioners. However, one of the signatories on Tang Chiang Ting's account at Sumitomo Bank, to which Shanghai Clinic transferred $10,800 in payment for Dr. Chan's lessons, was Jung Chu Fang. Jung Chu Fang also is one of the signatories on petitioners' bank account at Sumitomo Bank. Furthermore, on Apr. 2, 1990, the same day as the wire transfer of $10,800 from Shanghai Clinic to Tang Chiang Ting's account, Jung Chu Fang wrote a check from Tang Chiang Ting's account to Alice Shu-Ling Tang for $10,000, ostensibly as a repayment of a loan.

[7]When questioned by respondent at trial, Dr. Chan could not remember how much he paid petitioner in September 1990 for a lesson. He testified that he thought the amount paid was either $10,000 or $11,000. No further evidence as to the amount of this payment was brought forth.

check to Yao Min Ting, the person from whom petitioner had learned the principles and philosophy of Taoism. Petitioner and Dr. Chan did not discuss a particular amount; instead, Dr. Chan was to separate his gifts into different installments as he saw fit. Dr. Chan contradicts this, saying that the money he paid was a fee for lessons and not a gift.

Dr. Chan credibly testified that the checks were not made out to petitioner only because petitioner requested that they be made out in other people's names. Dr. Chan did not question why petitioner requested that the checks, in payment for lessons given by himself, were to be made out to other persons. Dr. Chan considered petitioner his master and therefore felt he was not in a position to question him. Dr. Chan never met nor received any services from Yao Min Ting. Shanghai Clinic deducted the amounts paid for these lessons with petitioner as a business expense. However, neither Dr. Chan nor his company issued a Form 1099 for any of the money paid to any individual for petitioner's lessons. Nonetheless, the notations on almost all of the checks indicate that they were checks in payment for training or consultation.

OPINION

The Commissioner's deficiency determination is normally entitled to a presumption of correctness. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The Court of Appeals for the Ninth Circuit, the court to which appeal of this case would lie, requires that the Commissioner come forward with some

substantive evidence that the taxpayer received unreported income before she may rely on the presumption that her determination is correct.  Delaney v. Commissioner, 743 F.2d 670, 671 (9th Cir. 1984), affg. T.C. Memo. 1982-666; Weimerskirch v. Commissioner, 596 F.2d 358, 360 (9th Cir. 1979), revg. 67 T.C. 672 (1977). Once the Commissioner has carried her initial burden of introducing some evidence linking the taxpayer with an income-producing activity, the burden is on the taxpayer to rebut the presumption by establishing by a preponderance of the evidence that the deficiency determination is arbitrary or erroneous. Rapp v. Commissioner, 774 F.2d 932, 935 (9th Cir. 1985).  Petitioner argues that the deficiencies determined by respondent in her notice of deficiency are in fact arbitrary and excessive. There is no dispute that petitioner performed certain services for Dr. Chan, nor is there a dispute that Dr. Chan paid some money on account of the services petitioner performed.  Petitioner's characterization of the determination as arbitrary is not sufficient to overcome the presumption of correctness.  Id.; Petzoldt v. Commissioner, 92 T.C. 661, 690 (1989).  Respondent, in the case herein, has come forward with sufficient evidence linking petitioners with unreported income; therefore, the burden is upon petitioners to establish that the deficiency determination is arbitrary or erroneous.  The record does not support a finding that petitioners have carried their burden with respect to this issue.

Petitioner claims that he is not the individual who ought to be properly charged with the money Dr. Chan and Shanghai Clinic paid for the lessons that petitioner taught.  We disagree.

Petitioner testified that, in 1990, Dr. Chan offered, merely as a sign of gratitude on his own volition, to write petitioner a check for any amount petitioner requested.  Instead, petitioner instructed Dr. Chan to show his gratitude by sending a gift or check to Yao Min Ting, the person from whom petitioner learned the principles and philosophy of Taoism.  Petitioner and Dr. Chan did not discuss a particular amount; instead, Dr. Chan was to separate his gifts into different installments as he saw fit.  Dr. Chan contradicts this, saying that the money he paid was a fee for lessons and not a gift.

Dr. Chan credibly testified that the checks were not made out to petitioner only because petitioner requested that they be made out in other people's names.  Dr. Chan did not question why petitioner requested that the checks, in payment for lessons given by himself, were to be made out to other persons.

One of the primary principles of our system of income taxation is that income must be taxed to the one that earns it.  Commissioner v. Culbertson, 337 U.S. 733, 739-740 (1949).  Attempts to subvert this principle by deflecting income away from the true earner to another entity, however clever, will not be successful.  Lucas v. Earl, 281 U.S. 111 (1930).  The choice of the proper taxpayer revolves around the question of which person

or entity in fact controls the earning of the income rather than the question of who ultimately receives the income. Wesenberg v. Commissioner, 69 T.C. 1005 (1978); American Sav. Bank v. Commissioner, 56 T.C. 828 (1971). The Supreme Court held in Helvering v. Horst, 311 U.S. 112, 117 (1940), that the power to dispose of income is the equivalent of ownership of it. Therefore, exercising power to procure payment of income to another is in fact the realization of the income by him who directed the payment. In the case herein, it is undisputed that petitioner performed services for Dr. Chan. The fact that petitioner did not need the money Dr. Chan paid for lessons in order to support his family does not negate the fact that money earned for the performance of services is income. Sec. 61(a)(1). Petitioner, however, contends that he not only did not receive payment for his services, but he also received no benefit from the payments to Yao Min Ting, Ting Yao Min, or Tang Chiang Ting.

The earner of income is not relieved of his tax liability merely because he chooses not to receive or enjoy the income for himself. Lucas v. Earl, supra. Petitioner performed the services for which Dr. Chan paid. Petitioner cannot avoid taxation simply by requesting that payment be made in the name of other persons. We find that all of the amounts paid by Shanghai Clinic to Yao Min Ting, Ting Yao Min, and Tang Chiang Ting, as well as a check from 1990 reimbursing Dr. Chan for money paid to petitioner, were income to petitioners. Petitioners have pre-

sented only their own uncorroborated and self-serving testimony to support their contentions. We are not required to accept their unsubstantiated testimony. Davis v. Commissioner, 88 T.C. 122, 141 (1987), affd. 866 F.2d 852 (6th Cir. 1989). We, however, find no basis to credit Dr. Chan's vague and uncertain testimony that he paid petitioner $15,000 in April and $10,000 or $11,000 in September. Petitioners deny receiving these payments, and Dr. Chan's testimony that they were paid was unconvincing. Therefore, we find that petitioners received in 1990 $101,400 and in 1991 $10,000 in unreported income as a result of petitioner's teaching activity.

Petitioner also argues that, despite the fact that he performed services for Dr. Chan, any money paid by Dr. Chan or Shanghai Clinic was a gift to Yao Min Ting and Tang Chiang Ting. Petitioners presented no evidence, other than their own self-serving testimony, to support their gift theory. Petitioners suggest that the amount of each payment, generally at least $10,000, supports a determination that the payments were gifts because it is unreasonable to pay someone such a large sum for lessons. The Court finds no support for such an argument in the record. Dr. Chan credibly testified that he believed the amounts being paid for the lessons were reasonable in light of the benefits that he received. These lessons took place between two unrelated parties, and there is no evidence to support a contention that the fee arrangement was made at other than arm's

length.  We cannot accept petitioner's uncorroborated testimony to this effect.  Petitioner's testimony was not forthright, and we found his testimony not credible.  In contrast, Dr. Chan credibly testified that it was petitioner who requested that he pay for the lessons, set the amount, and directed to whom the checks should be made payable.  We accept his testimony and find that the weight of the evidence supports this conclusion.

Respondent determined that petitioners are liable for an accuracy-related penalty under section 6662(a) for a substantial understatement in tax for the 1990 tax year.  A substantial understatement of tax exists when the amount of the understatement for the taxable year exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000.  Sec. 6662(d)(1).  An underpayment equals the excess of the tax imposed over the amount shown as tax on the taxpayer's return, plus the amounts not shown but previously assessed or collected, less rebates.  Sec. 6664(a).  Petitioners suggest no reasonable cause for this understatement, nor do we find that one exists.  Because we hold that petitioners failed to report the amounts paid by Dr. Chan and Shanghai Clinic to Yao Min Ting, Ting Yao Min, and Tang Chiang Ting on account of services petitioner rendered and petitioners reported tax due on their 1990 Federal tax return of only $8, petitioners are liable for the penalty under section 6662.

Decision will be entered

under Rule 155.